**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | |
|---|---|
| JAMES LESTER NEWTON,<br><br>Plaintiff,<br><br>v.<br><br>YARDSTIK, INC.,<br><br>Defendant. | **Civil Action No.:** 1:26-cv-00078<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT

James Lester Newton ("Plaintiff" or "Mr. Newton ") by and through his counsel brings the following Complaint against Yardstik, Inc. ("Defendant" or "Yardstik") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as a violent criminal.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was charged with a felony for "deadly conduct discharge firearm" and a felony for "aggravated assault with deadly weapon". Defendant's reporting is grossly inaccurate and untrue.

4. Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate felony charges, which do not belong to Plaintiff.

5. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available public court records from Howard County, Texas regarding the felony charges prior to publishing Plaintiff's report to his prospective employer.

6. Had Defendant performed even a cursory review of the public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their middle name, date of birth, and social security number.

7. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

8. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

9. Defendant's inaccurate report cost Plaintiff a good paying job and job security.

10. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

11. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

12. James Lester Newton ("Plaintiff" or "Mr. Newton") is a natural person residing in Big Spring, Texas, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

13. Defendant Yardstik, Inc. ("Defendant" or "Yardstik") is a Delaware corporation doing business throughout the United States, including the State of Texas and in this District, and has a principal place of business located at 100 Washington Avenue, S., Suite 600 Minneapolis, MN 55401.

14. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

15. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

18. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

19. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

20. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

21. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

22. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

23. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

24. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

25. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

26. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

27. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

**DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

28. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

29. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

30. The criminal background check industry takes in revenues in excess of three billion dollars, annually.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

31. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating criminal background checks.

32. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

33. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

34. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

35. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

36. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

37. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting felony charges that belong to an unrelated consumer who has a different middle name and date of birth than Plaintiff.

38. As a provider of background check reports, Defendant should be aware of the FCRA requirements and should be a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Energi Staffing

39. In early November 2025, Plaintiff applied for full-time employment at a fracking facility through Energi Staffing .

40. Thereafter, Plaintiff interviewed with Energi Staffing.

41. During his interview, Plaintiff self-disclosed his own criminal history and was informed that his own criminal history was not disqualifying.

42. The job opportunity was conditioned upon Plaintiff passing a background check ("consumer report").

### Defendant Published an Inaccurate Background Check Report to Energi Staffing

43. Energi Staffing contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

44. On or about December 23, 2025, Energi Staffing ordered a criminal background check on Plaintiff from Defendant.

45. On or about December 29, 2025, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to Energi Staffing.

46. Within that consumer report, Defendant published inaccurate information about Plaintiff.

47. Specifically, Defendant's consumer report about Plaintiff included two grossly inaccurate and stigmatizing violent felony charges from Howard County, Texas, which appeared in the consumer report as follows:

*** Abstract ***

| | | | |
|---|---|---|---|
| NAME ON RECORD | JAMES LESTER NEWTON | CASE NUMBER | 17164 |
| DOB ON RECORD | XXXX-[redacted] | COURT | TX; District |
| OTHER IDENTIFIERS | | FILE DATE | 2024-09-18 |
| OTHER INFO | Comments: | [redacted] BIG SPRING, TX 79720 | |

**Count**

| | | | |
|---|---|---|---|
| TYPE | FELONY | OFFENSE | AGGRAVATED ASSAULT WITH DEADLY WEAPON |
| DISPOSITION | Disposition: | Deferred Adjudication | |
| DISPOSITION DATE | 2024-11-07 | OFFENSE DATE | 2024-06-30 |
| SENTENCE | Probation: | 10 Years Deferred | |
| | Fine: | $2,000.00 | |
| | Court Fee: | $310.00 | |
| OTHER INFO | | | |
| COMMENT | | | |

**Count**

| | | | |
|---|---|---|---|
| TYPE | FELONY | OFFENSE | DEADLY CONDUCT DISCHARGE FIREARM |
| DISPOSITION | Disposition: | Deferred Adjudication | |
| DISPOSITION DATE | 2024-11-07 | OFFENSE DATE | 2024-06-30 |
| SENTENCE | Probation: | 10 Years Deferred | |
| OTHER INFO | | | |
| COMMENT | | | |

48. The violent criminal records reported by Defendant about Plaintiff to Energi Staffing ***do not*** belong to Plaintiff.

49. A cursory review of the widely available public court records confirms that the records belong to Plaintiff's son, James **Thomas** Newton ("Plaintiff's Son").

50. Had Defendant actually consulted or obtained the widely available public court records regarding the two violent felony charges, it would have seen obvious discrepancies between Plaintiff and Plaintiff's Son.

51. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as his son include the following:

(a) Plaintiff's legal name is "James ***Lester*** Newton" and the criminal records belong to a "James ***Thomas*** Newton," which is both clearly indicated on the face of the consumer report and in the widely available public records from Howard County, Texas;

(b) Plaintiff's date of birth, which was provided to Defendant prior to publishing the subject consumer report, is in March 1975, yet the public court records indicate that Plaintiff's son's was born in December 2006; and,

(c) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject consumer report is entirely different than that of Plaintiff's Son.

52. The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective employer.

53. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal charges belong to an unrelated individual with a different middle name than Plaintiff, a different date of birth, and a different Social Security Number.

54. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant

failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Energi Staffing Denies Plaintiff's Job Application**

55. On or about December 29, 2025, Plaintiff was notified by Energi Staffing that his employment application was denied as a direct result of the violent felony charges reported by Defendant.

56. Plaintiff explained to Energi Staffing that the violent felony charges do not belong to him. Plaintiff also provided Energi Staffing with a copy of his Department of Public Safety report.

57. Shortly thereafter, Plaintiff obtained a copy of the subject consumer report and was shocked and humiliated upon confirming that the violent criminal charges of another were published in the consumer report Defendant sold about Plaintiff to Energi Staffing.

58. Plaintiff was very panicked, confused, and concerned about the impact of Plaintiff's Son's violent criminal charges reported on the subject consumer report – specifically, the impact of the same on his future.

59. Specifically, Defendant matched Plaintiff and Plaintiff's Son and published the criminal records of Plaintiff's Son onto the consumer report about Plaintiff and sold that report to Plaintiff's prospective employer. The exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's consumer report to Energi Staffing, but Defendant failed to perform even a cursory review of such information.

/ /

**Plaintiff Disputed the Misinformation in Defendant's Consumer Report**

60. On December 29, 2025, desperate to secure employment with Energi Staffing and riddled with worry over the far-reaching impacts of being confused with his son, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via Defendant's online portal.

61. Plaintiff identified himself and provided information to Defendant to support his dispute.

62. Plaintiff specifically disputed the criminal records of Plaintiff's Son.

63. Plaintiff specifically stated that the criminal records of Plaintiff's Son do not belong to Plaintiff.

64. Plaintiff specifically asked Defendant to investigate and delete Plaintiff's Son's criminal records from any consumer report about Plaintiff.

65. On January 6, 2026, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and removed the criminal records from the subject consumer report.

66. Defendant also communicated to Plaintiff that it had issued a corrected consumer report to Energi Staffing.

67. Plaintiff continued to follow up with Energi Staffing in hopes that the job opportunity was still available, however, Energi Staffing informed Plaintiff that it had already filled the position.

68. Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Energi Staffing formed a negative opinion about Plaintiff and/or moved on to other candidates.

69. Defendant's false report cost Plaintiff a promising, well-paying job with Energi Staffing.

70. Moreover, the position Energi Staffing would have placed Plaintiff in was full-time. Plaintiff was set to earn $20.00 per hour, and there was an opportunity to work overtime.

71. Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek employment, Plaintiff remains unemployed with the exception of a few hours of work per week at his significant other's family member's restaurant.

72. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

73. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

74. Specifically, Plaintiff wants to support his significant other and propose to her. However, without full-time employment, Plaintiff fears that he is unable to support her and as though he is less of a man.

75. The inaccurate reporting has caused tension between Plaintiff and the son he is mixed with.

76. The inaccurate reporting is constantly on Plaintiff's mind. He is very distracted and suffers from sleepless nights and migraines.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

77. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

78. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

79. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

80. At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

81. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

82. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

83. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in

an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

84. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 20th day of February 2026.

By: */s/ McKenzie Czabaj*
McKenzie Czabaj, AZ Bar No. 036711
**Consumer Justice Law Firm PLC**
8095 North 85th Way
Scottsdale, Arizona 85258
Phone: (480) 626-2376
Fax: (480) 613-7733
Email: mczabaj@consumerjustice.com

Michael Yancey, III, AZ Bar No. 37187
**Consumer Justice Law Firm PLC**
825 Watter's Creek Boulevard
Building M – Suite 250
Allen, Texas 75013
Phone: (480) 573-9272
Email: myancey@consumerjustice.com

*Attorneys for Plaintiff James Lester Newton*